UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFASIGMA USA, INC., et al,<br><br>Plaintiffs,<br><br>v.<br><br>NIVAGEN PHARMACEUTICALS, INC.,<br><br>Defendant. | No. 2:17-cv-1974<br><br><br><br>ORDER |

*BACKGROUND*

Alfasigma USA, Inc. and Breckenridge Pharmaceutical, Inc. filed their complaint charging defendant Nivagen Pharmaceuticals, Inc. with committing violations of the federal Lanham Act, 15 U.S. C. section 1125,[1] along with supplemental state claims for fraud unfair competition and false advertising in violation of California Business and Professions Code section 17500, et seq. on September 22, 2017. ECF No. 1.[2] Plaintiff Alfasigma specializes in the production of "medical foods" which it defines as consumables subject to medical supervision[3]

---

[1] The Lanham Act permits a civil action against any person who uses false or misleading representations of its goods or services by a combination of words, terms, names, symbols or devices or false designation of origin or false or misleading description of fact which is like to cause confusion or deceive and allows damages and injunctive relief as remedies.

[2] Oddly the filing number on the complaint is 2:17-at-00979 and it was originally filed under seal, but now appears without sealing in the case number appearing above.

[3] Plaintiff states that medical foods, while non-drugs with no prescription required for their

1

used for dietary management of a disease or condition. ECF 1 at ¶¶ 9, 10. Plaintiff markets directly to physicians to whom it provides education on the benefit and uses of its products. Id. at ¶ 15. The specific "food" implicated in this action is "Foltx," which contains vitamins B6, B12 and folic acid which are recognized as regulators for conditions related to arteriosclerosis and coronary heart diseases. Id at ¶ 16. Plaintiff Breckenridge is also a pharmaceutical company which produces and sells a generic form of Folbic. Id at ¶ 17-19. The pharmaceutical industry maintains databases on which generic foods can be linked to brand products through an "honor system" of truthful representations and as to which no independent investigation is done. Id. at ¶¶ 22-23.[4] Competition between generic producers is primarily based on pricing. Id. at ¶ 26.

Defendant Nivagen is a producer of generics. Id at ¶ 27. In 2015 defendant began marketing a generic that it represented was equivalent to Alfasigma's brand product and Breckenridge's linked generic product on the industry recognized databases, but characterized it as a prescription product thereby entitling users to reimbursement by government agencies, whereas plaintiff's products are not so reimbursable. These efforts by defendant are directed to capture market share-- at which it has been successful. Id. at ¶ 29-34.

Plaintiffs allege that defendant's Nivagen's marketing scheme is unlawful insofar as it asserts the status described above, plus Nivagen publishes a "National Drug Code" on its Niva-Fol labels which is prohibited by the FDA as impermissibly allowing claims under governmental programs such as Medicaid, id. at ¶¶39-40. This action gives defendant a significant competitive advantage over plaintiffs' products. Id. at ¶¶41-44.

The motion on the undersigned's December 7 calendar is brought by plaintiff Alfasigma which seeks a court order to conduct expedited discovery under Federal Rule 26(d)(1).

*PLAINTIFF'S MOTION*

Plaintiff seeks to gather information to support its pending Motion for Preliminary Injunction, ECF No. 11, which was vacated from the district court's hearing calendar for

---

acquisition, does not prohibit physicians from writing prescriptions for them.
[4] Plaintiffs assert that the FDA uses the same type of system with regard to generics as it does for drug products. Id. at ¶ 23.

December 14, 2017, on which defendant's Motion to Dismiss, ECF No. 13, was also noticed, and taken under submission on November 1, 2017. ECF No. 18. Plaintiff proposes to depose Rule 30(b)(6) witnesses[5] and to obtain "limited documents and things" relevant to the false advertising and unfair product marketing claims found in the complaint. ECF No. 15-1 at 2:5-6.

The showing that must be made to succeed in this motion for expeditied discovery is a showing of good cause. Roadrunner Intermodal Services, LLC v. T.G.S. Transportation, Inc., 2017 WL 3783017*3 (E.D.Cal. 2017) *citing* In re Countrywide Fin. Corp. Derivative Litig., 542 F.Supp. 2d 1160, 1179 (C.D.Cal. 2008). Good cause allows consideration of: (1) whether a preliminary injunction is pending; (2) the breadth of the request; (3) the purpose of the request; (4) the burden placed on defendant; and how far in advance of the normal discovery process the request was made. Id. *citing* Rovio Entm't Ltd. v. Royal Plush Toys, Inc., 907 F.Supp.2d 1085 1099 (N.D.Cal. 2012). Good cause is found, at times, in cases involving claims of unfair competition or where a preliminary injunction is sought, AF Holdings LLC v. Doe, 2012 WL 5464577 *2 (E.D.Cal. 2012), both of which are elements of this case. However, expedited discovery is not the rule; it is the exception to the rule.

*DISCUSSION*

Plaintiff bases the need for expedited discovery on the premise that it is required for use in the pending motion for preliminary injunction. This basis for expediting makes no sense in the situation that exists here.

Plaintiff chose to file its Motion for Preliminary Injunction on October 23, 2017 and to notice it for hearing on December 14, 2017, and to bring this motion for expedited discovery on October 31, 2017, 8 days after the filing of the Motion. When, on November 1, 2017, the district judge took the preliminary injunction matter off its hearing calendar and submitted the Motion for

---

[5] The deposition notice called for appearance on November 20, 2017 and proposed to examine marketing, labeling, preparation and submission of labeling, FDA communications regarding the product at issue, offers for sale and sale of the product including bids and customer identification, customer communications, pricing and profit margins, key ingredients, identities of suppliers and manufacturing locations, and testing and analysis information. ECF No. 15-4. The accompanying Request for Production seeks 10 categories of documents that mirror the deposition subjects.

3

an ultimate written order, it gave no indication that it would accept an uninvited "rolling production" of evidence prior to deciding the Motion. Nor did the court indicate that it would expand the scope of plaintiff's substantive argument and evidence in support beyond the substance of plaintiff's already filed Memorandum, declarations and exhibits. Thus, according to the November 1 minute order, plaintiff's further submission is limited to a reply memorandum in which it would respond to the yet-to-be-filed opposition. The general introduction of newly produced evidentiary documents and testimonial information, *after the filing of the opposition*, and beyond the ability of response by defendant, is generally not permitted. The need for expediting discovery is procedurally ephemeral at best.

Nor does plaintiff relate why its Motion for Preliminary Injunction, as filed, is defective from an evidentiary standpoint without the rather broad discovery contemplated. That is, although it is always "nice to have" additional evidence piled on that filed already, even assuming a mechanism for presenting it, it is necessary in the context of expedited discovery to support an evidentiary motion to specifically relate why the evidence to be acquired is important to the motion. One can understand, for example, that discovery might be necessary on an expedited basis to authenticate a few documents, or tie down a very specific point, but one cannot understand that general discovery on the issues in a case, such as that proposed here by plaintiff, is appropriate at this stage.[6]

Further, the rushed timing of the proposed expedited discovery, is decidedly unfair here. Defendant Nivagen must expend significant time and energy in preparing an opposition to the preliminary injunction motion that is shortly due. Yet, plaintiff seeks an immediate corporate deposition under Rule 30(b)(6) which would require the corporation to identify and prepare a witness, or witnesses, for a deposition which would, for all intents and purposes, cover the waterfront of issues in this case, and which would bind the corporation throughout this case. Board of Trustees of Leland Stanford Junior University v. Tyco Inter. Ltd., 253 F.R.D 524, 525-

---

[6] The only request which was narrowly drawn was plaintiff's request for a few samples of defendant's product with its labeling—something it is difficult to conceive plaintiff does not have already.

4

526 (C.D.Cal. 2008). See also Sprint Commc'ns. Co. v Thglobe.com, Inc. 236 F.R.D. 524, 527 (D. Kan. 2006), recognizing no distinction between the corporate representative and the corporation. The producing corporation "has a duty under Rule 30(b)(6) to provide a witness who is knowledgeable in order to provide 'binding answers on behalf of the corporation.'" Elam Microelectronics Corp. v. Pixcir Microelectronics Co. Ltd., 2013 WL 4101811 (D.Nev. 2013) *quoting* Starlight International, Inc. v. Herlihy, 186 F.R.D. 626, 638 (D.Kan. 1999). Thus, the preparation of a Rule 30(b)(6) witness with regard to the subjects of his or her testimony requires a thorough review of the deposition topics identified by the deposing party and a thorough review of documents relevant to those topics. This cannot be performed in a day or two or three. Plaintiff seeks very broad requests for production of documents to be made before the 30(b)(6) deposition that would require searches, including electronic searches, on a "worldwide" basis (plaintiff's instruction), and would therefore require a significant amount of effort to be undertaken in a very short period of time potentially resulting in production of most documents relevant to the elements of the lawsuit. The burden then thrust upon the designated testifying witness or witnesses therefore becomes even more weighty insofar as the quantity of documents to be reviewed would be one that would normally be reviewed for a more significant period of time before the date for the deposition at which they would be discussed.

Finally, plaintiff's argument that—defendant will have to undertake to respond to the same discovery in due time in any event—is singularly unpersuasive given that the issue here is the very expedited nature of the discovery, not the discovery itself.

*CONCLUSION*

In light of the foregoing it IS THEREFORE ORDERED that: Plaintiff's Motion for Expedited Discovery is DENIED.

Dated: November 28, 2017

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE