UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFASIGMA USA, INC.; BRECKENRIDGE PHARMACEUTICAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NIVAGEN PHARMACEUTICALS, Inc., <br><br> Defendant. | No. 2:17-cv-01974-MCE-GGH <br><br> **MEMORANDUM AND ORDER** |

By way of this action, Plaintiffs Alfasigma USA, Inc. ("Alfasigma") and Breckenridge Pharmaceutical, Inc. ("Breckenridge") (collectively, "Plaintiffs") seek an injunction and damages arising from Defendant Nivagen Pharmaceuticals, Inc.'s ("Defendant" or "Nivagen") allegedly misleading advertising associated with its product, Niva-Fol. Plaintiffs allege the following causes of action: (1) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) fraud; (3) unfair competition in violation of Cal. Bus. & Prof. Code § 17200, et seq., and (4) false advertising in violation of Cal. Bus. & Prof. Code § 17500, et seq. Presently before the Court are Plaintiffs' Motion for Preliminary Injunction and Defendant's Motion for an Extension of Time ("EOT") to Complete Rule 26(f) Conference. An order addressing Defendant's Motion to Dismiss, ECF No. 13, is forthcoming. For the reasons set forth below, Plaintiffs' Motion for

Preliminary Injunction, ECF No. 11, is DENIED and Defendant's Motion for EOT, ECF No. 31, is GRANTED.

## **BACKGROUND**[1]

Alfasigma produces "medical foods," which are consumables subject to medical supervision, but distinct from both prescription drugs and dietary supplements. Medical foods do not require a prescription, but, because they are intended to be used under a doctor's supervision, subscriptions for their use are common. Even so, they are not eligible for reimbursement by Medicaid, Medicare, or many private insurers. As is relevant to this action, Alfasigma formulated one of its medical foods, Foltx, "to meet the distinct nutritional requirements of persons with certain diseases and medical conditions that may benefit from administration of vitamins B6, B12, and folic acid . . . ." Pls' Mot. at 3-4.

Breckenridge is a pharmaceutical company that produces a generic version of Foltx called Folbic. According to Plaintiffs, the pharmaceutical industry maintains a database in which generic foods can be linked to their name brand equivalent. This linking is done by way of an honor system in which the pharmaceutical company itself represents that it is the generic equivalent of a certain branded product and is not verified by any independent source or agency. As a result, if a generic company represents to industry databases that its generic medical food contains the same active ingredients in the same amounts as a certain branded product, the databases will link the generic to the brand. No outside testing or sampling is done to verify; the databases simply compare the claims made on the products labels to see that they contain the same active ingredients in the same amounts.

///

---

[1] The following recitation of facts is taken from Plaintiffs' Complaint, ECF No. 1, and Plaintiffs' Motion for Preliminary Injunction, ECF No. 11.

2

Nivagen produces generics, and in 2015 began marketing a generic that it represented was equivalent to Alfasigma's branded product and Breckenridge's generic, causing it to be linked to those products on industry databases. But Nivagen also characterized its product as a prescription drug that requires an "Rx" on the label, thereby entitling users to reimbursement. Nivagen additionally caused Niva-Fol to be shown as having a National Drug Code or National Health Related Items Code number, which identifiers are provided for approved drugs and medical devices only, of which Niva-Fol is neither. Those identifiers also qualify Niva-Fol for federal reimbursement. Plaintiffs allege that this conduct has given Nivagen a competitive advantage over non-reimbursable products offered by Plaintiffs, and has allowed it to capture market share.

**STANDARDS**

### A. Motion for Preliminary Injunction

"A preliminary injunction is an extraordinary and drastic remedy." Munaf v. Geren, 553 U.S. 674, 690 (2008). "[T]he purpose of a preliminary injunction is to preserve the status quo between the parties pending a resolution of a case on the merits." McCormack v. Hiedeman, 694 F.3d 1004, 1019 (9th Cir. 2012). A plaintiff seeking a preliminary injunction must establish that he is (1) "likely to succeed on the merits;" (2) "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) "an injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008). "If a plaintiff fails to meet its burden on any of the four requirements for injunctive relief, its request must be denied." Sierra Forest Legacy v. Rey, 691 F. Supp. 2d 1204, 1207 (E.D. Cal. 2010) (citing Winter, 555 U.S. at 22). "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Prod. Co. v. Gambell, 480 U.S. 531, 542 (1987)). A district court should enter a preliminary injunction only "upon a clear showing

1  that the plaintiff is entitled to such relief." <u>Winter</u>, 555 U.S. at 22 (citing <u>Mazurek v. Armstrong</u>, 520 U.S. 968, 972 (1997)).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and shows that an injunction is in the public interest, a preliminary injunction can still issue so long as serious questions going to the merits are raised and the balance of hardships tips sharply in the plaintiffs' favor. <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after <u>Winter</u>).

When the moving party seeks a preliminary injunction that is mandatory, rather than prohibitory, the moving party must meet an even higher standard; no injunction should issue unless the facts and law <u>clearly favor</u> the moving party. As the Ninth Circuit explains:

> Mandatory preliminary relief, which goes well beyond simply maintaining the status quo Pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party.... Courts are more reluctant to grant a mandatory injunction than a prohibitory one and ... generally an injunction will not lie except in prohibitory form. Such mandatory injunctions, however, are not granted unless extreme or very serious damage will result and are not issued in doubtful cases.

<u>Anderson v. United States</u>, 612 F.2d 1112, 1114-15 (9th Cir. 1980) (internal citations omitted); <u>see also</u> <u>Stanley v. Univ. of S. Cal.</u>, 13 F.3d 1313, 1319 (9th Cir. 1994) ("In cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo <u>pendente lite</u>, courts should be extremely cautious about issuing a preliminary injunction.").

### B. Motion for Extension of Time

Defendant's EOT to Complete Rule 26(f) Conference requires the Court to modify its Initial Pretrial Scheduling Order ("IPTSO"), ECF No. 3. Generally, the Court is required to enter a pretrial scheduling order within 120 days of the filing of the complaint. Fed. R. Civ. P. 16(b). The scheduling order "controls the subsequent course of the

action" unless modified by the Court.  Fed. R. Civ. P. 16(e).  Orders entered before the final pretrial conference may be modified upon a showing of "good cause," Fed. R. Civ. P. 16(b), but orders "following a final pretrial conference shall be modified only to prevent manifest injustice."  Fed. R. Civ. P. 16(e); see also Johnson v. Mammoth Recreations, 975 F.2d 604, 608 (9th Cir. 1992).

Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment.  Johnson, 975 F.2d at 609.  The district court may modify the pretrial schedule "if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes (1983 amendment); id.  Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief.  Johnson, 975 F.2d at 609.  Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification.  Id. (citing Gestetner Corp. v. Case Equip. Co., 108 F.R.D. 138, 141 (D. Me. 1985)).  If the moving party was not diligent, the Court's inquiry should end.  Id.

## ANALYSIS

### A. Plaintiffs' Motion for Preliminary Injunction

By way of its Motion for Preliminary Injunction, Plaintiffs seek an order enjoining Nivagen from "advertising, promoting, offering to sell or selling its Niva-Fol product pending trial of this action."  Pls.' Mot., ECF No. 11-1, at 1.  Specifically, Plaintiffs seek injunctive relief: (1) enjoining Nivagen from stating, on its labeling or otherwise, that Niva-Fol is reimbursable by government and/or private insurers and that Niva-Fol is "Made in the USA"; (2) requiring Nivagen to immediately correct the false statements and misrepresentations concerning Niva-Fol that it has already made in order to be listed on industrywide generics databases and that such corrections be made to all customers

1 and prospective customers of Nivagen; and (3) requiring Nivagen to recall any and all
2 Niva-Fol that has been sold or distributed with labeling that contains false and
3 misleading statements. See Pls.' Proposed Order, ECF No 11-10.

4 Plaintiffs claim that Nivagen's conduct, as described above, "threaten irreparable
5 injury both to Plaintiffs and the public. Nivagen's unlawful competition . . . will cause a
6 diversion of sales and profits and a lessening of the goodwill associated with Plaintiffs'
7 products." ECF No. 11-1, at 2. Additionally, Plaintiffs are concerned that Nivagen's
8 small size and low profit level will render any future judgment for damages impossible to
9 obtain.

10 As a preliminary matter, Plaintiffs and Defendant disagree on the standard the
11 Court should apply in considering the pending Motion. While Plaintiffs argue for the
12 "sliding scale" approach, Defendant asserts that a higher standard applies to the Court's
13 analysis of Plaintiffs' likely success on the merits because Plaintiffs seek a mandatory
14 injunction, as opposed to an injunction that would simply maintain the status quo. As is
15 evident in their Proposed Order Granting Preliminary Injunction, ECF No. 11-10,
16 Plaintiffs indeed seek a mandatory injunction. As provided above, Defendant is
17 therefore correct that no injunction should issue unless the facts and law <u>clearly favor</u> the
18 moving party. Not only do Plaintiffs not meet this higher standard concerning the merits
19 of their claims, but Plaintiffs have additionally failed to establish any degree of
20 irreparable harm, nor have they shown that the balance of hardships tips in their favor, or
21 that an injunction would necessarily be in the public's interest. As a result, Plaintiffs'
22 request fails under even the lower sliding scale approach, and is therefore DENIED.

23 More specifically, even without addressing Plaintiffs' likelihood of success on the
24 merits (serious questions or otherwise), Plaintiffs have failed to establish that any
25 irreparable harm is likely in this case, and as such, an injunction would not be warranted
26 even if the Court were to find a high likelihood of success on the merits of their claims.[2]

27

28 [2] The alleged damages certainly do not rise to the heightened level of "extreme or very serious damage" under Anderson, 612 F.2d at 1115.

6

To the contrary, Plaintiffs claimed damages are all financially-based. Specifically, Nivagen's actions have or will: cause customers "to request a lower price" or to "purchase Niva-Fol instead"; "cause Breckenridge to lose sales"; "force Breckenridge to lower its own offering price"; "additional customers will then follow"; will force Breckenridge to offer a "shelf-stock adjustment" in price; will cause a "loss of goodwill" with certain customers, lost market share, and "other economic losses." ECF No. 11-1, at 15-17. In other words, even assuming Plaintiffs' claimed injuries are accurate—which Defendant disputes—Plaintiffs' purported injury, including any damage to their goodwill, is economical and thus entirely compensable. To the extent courts may consider a loss of goodwill to be intangible under certain circumstances, those circumstances are not present here. Indeed, Plaintiffs' claimed loss of goodwill is the only even potentially intangible damage it claims, and it is entirely speculative at this point. Such a speculative injury is not enough to carry the day here. See Regents of the University of California v. American Broadcasting Companies, 747 F. 2d 511, 20 (9th Cir. 1984); compare to dissent, id. at 523-24.

Plaintiffs lastly argue that the harm they face is irreparable because Nivagen will not be able to satisfy a judgment against it. This argument fares no better for two reaons. First, Plaintiffs seem to be simultaneously arguing that Nivagen is taking customers and stealing market share at a rapid pace, while also making little profit doing so. Of course this is possible, but strikes the Court as unlikely. Second, and more importantly, the case law cited in support of this contention provides that an injunction may be warranted where the infringing party is insolvent or is deliberately dissipating funds to avoid judgment. There is no indication that Nivagen meets either of these profiles. The Court therefore finds Plaintiffs would not be likely to face irreparable harm should an injunction not issue.

This alone is reason to deny Plaintiffs' Motion, but on top of that, Plaintiffs' delay in bringing the Motion serves to undercut any claim of irreparable an imminent harm. Indeed, Breckenridge sent Nivagen a letter in June 2015 indicating its knowledge that

Niva-Fol had been linked to its product on industry databases and conveying its belief that Nivagen was engaging in false advertising and unfair business practices. See Ex. A to Decl. of Jay Shukla ISO Def.'s Opp. But Plaintiffs waited until September 2017 to file the pending action, and waited until October of that year to file the present Motion for Preliminary Injunction, noticing it for December 2017. And only then did Plaintiffs unsuccessfully seek expedited discovery to support their request for an injunction, which provides at least a tacit admission that they do not have sufficient evidence to support the Motion as it stands. See Pls.' Mot. Expedited Discovery, ECF No. 15; Order, ECF No. 28.

As for the balance of equities, the Court is not convinced that they tip—sharply or otherwise—in favor of Plaintiffs. Plaintiffs have failed to so much as allege that customers are in fact choosing Nivagen's product over their products, let alone that they are doing so at a rate that puts Plaintiffs' businesses at risk of greater damages than would be caused by enjoining Nivagen—a much smaller entity—from advertising, promoting, or selling its product, and requiring it to change its labeling, correct any false statements already made, and recall any product already sold. This factor is neutral at best, and more likely tips in favor of Defendant.

Finally, Plaintiffs' claim that public interest weighs in favor of granting the sought-after injunction to protect consumers from false advertising is countered by Defendant's point that competition is also in the public interest. Again, this factor is neutral at best and does not justify the extraordinary remedy sought here.

For the above reasons, Plaintiffs' Motion for Preliminary Injunction is DENIED without prejudice.[3]

### B. Defendant's Motion for Extension of Time

By way of its EOT, Defendant seeks to modify the Court's IPTSO to postpone the required Federal Rule of Civil Procedure 26(f) conference until the Court issues an order

---

[3] Defendant's related objections to the declarations of Plaintiffs' witnesses, and Plaintiffs' objections to Defendant's witness declarations are overruled as MOOT.

8

regarding Defendant's pending Motion to Dismiss. Defendant also filed timely objections to the IPTSO, seeking the same relief sought by its Motion. ECF No. 30. Both Defendant's Motion and its objections were timely sought, indicating Defendant's diligence in pursuing the relief sought once it became clear that a stipulation could not be reached. See Johnson, 975 F.2d at 609. Moreover, an extension simply makes sense. Indeed, Defendant wishes to avoid the possibly unnecessary costs of engaging in discovery unless and until the pleadings in this case are permitted to move forward. Such a request is not unreasonable.[4]

Therefore, on review of the parties' briefing and the docket in general, and finding good cause for an extension, the Court GRANTS Defendant's Motion and SUSTAINS its objections to the IPTSO.

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunction, ECF No. 11, is DENIED and Defendant's Motion for Extension of Time, ECF No. 31, is GRANTED. The IPTSO is hereby deemed final, but amended as follows:

1. The parties shall meet and confer as required by Federal Rule of Civil Procedure 26(f) regarding their discovery plan not later than fourteen (14) days following the date an order disposing of Defendant's Motion to Dismiss is electronically filed;

///

///

///

---

[4] Plaintiffs argue that the standard for staying discovery should apply here. The Court disagrees. Because the IPTSO was never final, a stay in discovery is not necessary. Nor has the Court stayed discovery by this Order—it has simply amended the IPTSO to reflect a new deadline by which the parties shall participate in the Rule 26(f) conference. In any event, and contrary to Plaintiffs' assertions, district courts have broad discretion to stay discovery in a case while a dispositive motion is pending. Orchid Biosciences, Inc. v. St. Louis Univ., 198 F.R.D. 670, 672 (S.D. Cal.2001) (citing Data Disc, Inc. v. Sys. Tech. Associates, Inc., 557 F.2d 1280 (9th Cir.1977)).

2. All discovery, with the exception of expert discovery, shall be completed no later than three hundred sixty-five (365) days following the date the Court's same order is filed on the docket; and

3. All other dates set forth in the Court's IPTSO shall be modified accordingly.

IT IS SO ORDERED.

Dated: March 30, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE