UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFASIGMA USA, INC.; BRECKENRIDGE PHARMACEUTICAL, INC., | No. 2:17-cv-01974-MCE-GGH |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| NIVAGEN PHARMACEUTICALS, Inc., | |
| Defendant. | |

By way of this action, Plaintiffs Alfasigma USA, Inc. ("Alfasigma") and

Breckenridge Pharmaceutical, Inc. ("Breckenridge") (collectively, "Plaintiffs") seek an

injunction and damages arising from Defendant Nivagen Pharmaceuticals, Inc.'s

("Defendant" or "Nivagen") allegedly misleading advertising associated with its product,

Niva-Fol. Plaintiffs allege the following causes of action: (1) false advertising in violation

of the Lanham Act, 15 U.S.C. § 1125(a); (2) fraud; (3) unfair competition in violation of

Cal. Bus. & Prof. Code § 17200, et seq., and (4) false advertising in violation of Cal.

Bus. & Prof. Code § 17500, et seq. Presently before the Court is Defendant's Motion to

Dismiss. ECF No. 13. For the reasons set forth below, that Motion is GRANTED.[1]

---

[1] Defendant's Requests for Judicial Notice, ECF Nos. 13-2 and 26-1, are DENIED. The requests seek to admit evidence which is inappropriate at this time, where the Court's role is to determine the sufficiency of Plaintiffs' pleadings, not the merit of their claims.

Alfasigma produces "medical foods," which are consumables subject to medical supervision, but distinct from both prescription drugs and dietary supplements. Medical foods do not require a prescription, but, because they are intended to be used under a doctor's supervision, prescriptions for their use are common. Even so, they are not eligible for reimbursement by Medicaid, Medicare, or many private insurers. As is relevant to this action, Alfasigma formulated one of its medical foods, Foltx, "to meet the distinct nutritional requirements of persons with certain diseases and medical conditions that may benefit from administration of vitamins B6, B12, and folic acid . . . ." Compl. at ¶ 16.

Breckenridge is a pharmaceutical company that produces a generic version of Foltx called Folbic. Plaintiffs entered into an agreement allowing Breckenridge to market and sell Folbic as a generic of Foltx in 2007.

According to Plaintiffs, the pharmaceutical industry maintains a database in which generic foods can be linked to their name brand equivalent. This linking is done by way of an honor system in which the pharmaceutical company itself represents that it is the generic equivalent of a certain branded product. That information is not verified by any independent source or agency. As a result, if a generic company represents to industry databases that its generic medical food contains the same active ingredients in the same amounts as a certain branded product, the databases will link the generic to the brand. No outside testing or sampling is done to verify; the databases simply compare the claims made on the products labels to see that they contain the same active ingredients in the same amounts. In reliance upon a representation from a generic company that its product contains the same active ingredients in the same amounts as a listed brand or equivalent generic product, the industry databases will represent to the pharmaceutical industry that the generic product is pharmaceutically equivalent to the listed products.

---

[2] The following recitation of facts is taken from Plaintiffs' Complaint, ECF No. 1.

1    Nivagen produces generics, and in 2015 began marketing a generic—Niva-Fol—

2    that it represented was equivalent to Alfasigma's branded product, Foltx, and

3    Breckenridge's generic, Folbic.  Nivagen labeled this product as containing the same

4    active ingredients in the same strengths as Foltx and Folbic, causing it to be linked to

5    those products on industry databases.  But Nivagen also characterized its product as a

6    prescription drug that requires an "Rx" on the label, thereby entitling users to

7    reimbursement.  Nivagen additionally caused Niva-Fol to be shown as having a National

8    Drug Code ("NDC") or National Health Related Items Code ("NHRIC") number, which

9    identifiers are provided for approved drugs and medical devices only, of which Niva-Fol

10   is neither.  Those identifiers also qualify Niva-Fol for federal reimbursement.  Nivagen

11   has also designated its product as "Made in the USA," when, Plaintiffs contend, it is not.

12       Plaintiffs allege that this conduct has given Nivagen a competitive advantage over

13   non-reimbursable products offered by Plaintiffs and has allowed it to capture market

14   share.

15

16                                           **STANDARD**

17

18       On a motion to dismiss for failure to state a claim under Federal Rule of Civil

19   Procedure 12(b)(6), all allegations of material fact must be accepted as true and

20   construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

21   Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

22   statement of the claim showing that the pleader is entitled to relief' in order to 'give the

23   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

24   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

25   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

26   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

27   his entitlement to relief requires more than labels and conclusions, and a formulaic

28   recitation of the elements of a cause of action will not do."  Id. (internal citations and

                                              3

1  quotations omitted).  A court is not required to accept as true a "legal conclusion

2  couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

3  Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

4  above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

5  Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

6  pleading must contain something more than "a statement of facts that merely creates a

7  suspicion [of] a legally cognizable right of action")).

8          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

9  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

10  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

11  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

12  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright &

13  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

14  relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

15  claims across the line from conceivable to plausible, their complaint must be dismissed."

16  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

17  that actual proof of those facts is improbable, and 'that a recovery is very remote and

18  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

19          When a claim for fraud is raised, Federal Rule of Civil Procedure 9(b) provides

20  that "a party must state with particularity the circumstances constituting fraud."  "A

21  pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud

22  so that the defendant can prepare an adequate answer from the allegations."

23  Neubronner v. Milken, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations and

24  citations omitted).  "The complaint must specify such facts as the times, dates, places,

25  benefits received, and other details of the alleged fraudulent activity."  Id. at 672.

26  Furthermore, "a plaintiff who makes allegations on information and belief must state the

27  factual basis for the belief."  Id.

28  ///

4

1    A court granting a motion to dismiss a complaint must then decide whether to

2    grant leave to amend.  Leave to amend should be "freely given" where there is no

3    "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

4    to the opposing party by virtue of allowance of the amendment, [or] futility of the

5    amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

6    Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

7    be considered when deciding whether to grant leave to amend).  Not all of these factors

8    merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

9    carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

10   185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

11   "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

12   Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

13   1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

14   1989) ("Leave need not be granted where the amendment of the complaint . . .

15   constitutes an exercise in futility . . . .")).

16

17                                        **ANALYSIS**

18

19        Defendant moves to dismiss Plaintiffs' Complaint in its entirety, arguing that

20   (1) Plaintiffs fail to state a claim for relief under either Rule 8(a) or 9(b); (2) the FDA has

21   primary jurisdiction over a critical issue in this case, and so the Court should dismiss the

22   action; and (3) Plaintiffs lack standing to sue for speculative injuries.

23                          **A.  Failure to State a Claim**

24        As a preliminary matter, the parties disagree over the standard the Court should

25   apply in evaluating Plaintiffs' Complaint.  Defendant argues that the heightened standard

26   of Rule 9 should apply because Plaintiffs' claims are grounded in fraud.  Plaintiffs

27   counter that "not all of [their] claims are grounded in fraud," but also argue that their

28   pleadings meet the higher standard in any event.  It appears Plaintiffs' claims do indeed

1    sound in fraud, and Plaintiffs do not specify which claims, if any, are not so based.  For

2    that reason, the Court applies the heightened standard of Rule 9 below, but at the same

3    time, agrees that Plaintiffs have met that standard, with the exception of its claim

4    concerning Defendant's "Made in the USA" designation, which fails under any standard.

5         The Complaint points to four allegedly deceptive claims on Nivagen's label:

6    (1) the active ingredients; (2) the prescription designations; (3) the "made in the USA"

7    designation; and (4) the NHRIC number allegedly issued by the FDA.  With respect to

8    those four claims, Defendant argues:

9         (1) The Complaint fails to allege the factual basis for its belief that Niva-Fol lacks

10             the same active ingredients as Plaintiffs' products, or why it is not

11             substitutable.[3]

12        (2) The Complaint fails to detail how Nivagen's labeling of its product as a

13             prescription conveys a falsehood.  Plaintiffs allege Niva-Fol is not a

14             prescription drug, but do not articulate why it is misleading to label a dietary

15             supplement as prescriptive.  Defendant explains that FDA regulations require

16             a prescription for products containing 1.0 mg or more of folic acid, and nothing

17             in the Complaint indicates Niva-Fol's levels are below 1.0 mg.

18        (3) The Complaint does not detail how "made in the USA" conveys a falsehood,

19             nor does it explain what is material about this particular misrepresentation or

20             why the statement is deceptive.

21        (4) The Complaint alleges the FDA actually assigned Niva-Fol an NHRIC number,

22             making that label "literally true," and fails to explain how Nivagen provided

23             deceptive information to the FDA, or how this misrepresentation was material.

24             With regard to Plaintiffs' belief that Defendant made misrepresentations to the

25    ///

26

27        [3] Plaintiffs clarify in their Opposition that the thrust of their substitutability argument is to establish
     that Defendant is a competitor of Plaintiffs, and therefore that Plaintiffs have standing.  The Court therefore
     does not address whether Plaintiffs have adequately alleged that Niva-Fol has different active ingredients,
28    because it appears Plaintiffs do not intend to make that claim at all.

1    FDA to obtain the number, the Complaint fails to allege any factual basis for

2        that belief.

3  Mot. at 7-11.  Defendant secondarily argues that Plaintiffs' Lanham Act claim fails to

4  state a "right to relief above the speculative level" because nothing in the Complaint

5  details how the alleged misrepresentations deceived or had the tendency to deceive, or

6  how those misrepresentations give Defendant an unfair competitive advantage.  Mot. at

7  13, citing Twombly, 550 U.S. at 555.

8        Plaintiffs of course contend that their Complaint sufficiently alleges facts in

9  support of their various claims for relief.  Plaintiffs argue that they have identified the

10  label itself and the product's listing on Daily Med—the official source for FDA drug label

11  information—as the specific commercial communications containing misrepresentations.

12  Plaintiffs also claim that Niva-Fol is a dietary supplement and therefore should not have

13  an NDC or NHRIC number, but it does.  Plaintiffs argue that such numbers make the

14  product eligible for federal and private reimbursements, and that purchasers of

15  pharmaceutical products rely on reimbursability in making purchasing decisions.

16  Plaintiffs also argue that they have alleged the Niva-Fol label and packaging contain the

17  representation that the product is a "prescription" or "Rx" when it is not, which—in

18  combination with its listing on Daily Med—is particularly deceiving to pharmaceutical

19  product purchasers.  With regard to Niva-Fol's "Made in the USA" representation,

20  Plaintiffs provide that Nivagen markets their product as made in the USA when it is not,

21  in order to gain a competitive advantage.

22        Plaintiffs assert that they have therefore alleged how the representations are

23  false, the materiality of those misrepresentations, why they have a tendency to deceive,

24  and who the audience is.  And, as Plaintiffs point out, Rule 9(b)'s requirements are

25  relaxed when the information that should typically be pleaded is known only to the

26  defendant.  See, e.g., Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153,

27  158 (1991).

28  ///

7

In this case, the Court agrees that Plaintiffs might not—and should not—know exactly how the alleged misrepresentations came to be published. Nonetheless, the Complaint alleges the following:

- Prescriptions are not required for medical foods, but they are often dispensed via prescription; regardless, they are not eligible for reimbursement by Medicaid, Medicare, or many private insurers. Compl. ¶¶ 11, 14.

- Once a generic is "linked" to a brand or another generic on the database, that linked product "will as a result have represented to the customer base shared by all generics (namely, pharmaceutical chains, distributors and wholesalers) that its generic product is equivalent to and substitutable for the brand or other equivalent generic product, and may be dispensed to fill prescriptions for either. . . . Once products are linked and substitutable, the main differentiator in the marketplace is related to product pricing, but can also be affected by other attributes or aspects of those products." Id. ¶¶ 25-26.

- Nivagen "advertises and promotes its products to pharmaceutical wholesalers, distributors, pharmacies, pharmacists and national drug databases as 'generics' or substitutes for brand or other equivalent generic pharmaceutical products." Id. ¶ 27.

- Nivagen began marketing Niva-Fol in March 2015. Id. ¶ 29.

- "[I]n its commercial advertising and promotion to wholesalers, pharmacies, pharmacists and others in the pharmaceutical distribution chain, Nivagen markets Niva-Fol as a generic equivalent and substitute for Foltx and/or Folbic, differentiating Niva-Fol . . . on the basis of pricing parameters (including status as a prescription product reimbursable by government agencies)." Nivagen has caused Niva-Fol to be linked to Foltx an Folbic in industry databases and has caused it to be described as a prescription

product requiring an Rx symbol on its label, "for among other reasons, reimbursement applications." Nivagen has also intentionally had Niva-Fol listed on DailyMed where it is shown to have an NDC and/or NHRIC number. Id. ¶ 31.

- Niva-Fol represents that its product is "Made in the USA" when it is not, and that it is a prescription dietary supplement. It has also improperly caused Niva-Fol to be listed on DailyMed as having an NDC and/or NHRIC number by either submitting or authorizing others to submit information on its behalf to obtain that listing. Niva-Fol submitted or authorized others to submit information to the FDA causing its product to be listed on DailyMed as a prescription dietary supplement that requires an Rx on the label, and that requires "Rx status" and an NDC number. Id. ¶¶ 35-42.

- "By wrongfully conveying that its product had an NDC and/or NHRIC number, Nivagen knowingly and wrongfully obtained a competitive advantage of appearing to be[] eligible for reimbursement by government agencies, including Medicaid." Id. ¶ 41.

These allegations are enough for the Complaint to survive the pleading standards of both Rule 8(a) and 9(b). Though Plaintiff does not allege the exact statements made to the FDA, or even who made them, this case does not lend itself to Plaintiffs having those kind of details at this point. If the allegations are to be substantiated, that information is known only to Defendant at this time, and is not required to be pleaded up front. The Court thus finds the Complaint sufficiently "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Neubronner, 6 F.3d at 671-672.

Additionally, Defendant's more specific arguments for dismissal rely not on the pleadings alone, but on their position that Plaintiffs cannot prove their allegations. For example, Defendant argues that a prescription designation is appropriate for its product

9

because it contains more than 1.0 mg of folic acid, or rather, that the Complaint fails to allege that it contains less than 1.0 mg. Defendant also argues that Niva-Fol cannot enjoy an unfair advantage over Folbic, because Folbic is also labeled with an NDC number and Rx designation. But these arguments go to the merits of Plaintiffs' claims, not the sufficiency of their pleadings. They are therefore unpersuasive at this stage of the litigation.

The single exception to the analysis above is Plaintiffs' claims concerning Defendant's "Made in the USA" designation. Plaintiffs have stated no factual basis whatsoever for their claim that the designation is false or otherwise improper. The allegation that the product is not actually made in the USA is conclusory and, because Plaintiffs have failed to raise any supporting facts, any claim based on that conclusory statement should be dismissed. However, none of Plaintiffs' causes of action are based on that designation alone. Therefore, Plaintiffs are ordered to file an amended complaint not later than twenty (20) days from the date of electronic filing of this Order, either (1) alleging facts in support of their claim that the Made in the USA designation is false or misleading, or (2) striking any reference to the allegedly improper designation.

## B. Injury

Despite the overall sufficiency of the pleadings with respect to Plaintiffs' factual bases for their causes of actions, the Court agrees with Defendant's assertion that Plaintiffs' Complaint fails to sufficiently allege injury in fact. Plaintiffs' Complaint alleges that Defendant's conduct discussed above "has and/or will" harm Plaintiffs in various ways. See, e.g., Compl. ¶¶ 44, 51-52, 56-57, 61. Plaintiffs argue that since they "have adequately alleged past and existing economic harm, [their] allegations of future harm are satisfactorily based on a 'substantial risk' that it will continue to occur." Opp. at 18. But Plaintiffs have not adequately alleged past and existing harm. No facts at all support Plaintiffs' allegations that they have been harmed, and therefore nothing supports their claim that there is a substantial risk of continuing harm.

///

For this reason, Defendant's Motion to Dismiss is GRANTED.[4]  Because the defect described above could be cured by amendment, Plaintiffs are granted leave to amend and may do so not later than twenty (20) days from the date of electronic filing of this Order.  If no amended complaint is timely filed, the action will be dismissed without further notice to the parties.

**CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED with leave to amend as described above.

IT IS SO ORDERED.

Dated:  September 16, 2018

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

---

[4] In light of this ruling, the Court need not and does not address Defendant's FDA Primacy argument.  Plaintiffs' claims are not barred by any exclusivity doctrine, a point Defendant seems to concede.  To the extent the FDA might have primary jurisdiction over any issues in this case, those issues seem to relate to Defendant's defense, and are not at the core of Plaintiffs' pleading.  Defendant is therefore free to raise its primacy argument again at a later date.